The Law Office of Anthony Paul Diehl
Anthony Paul Diehl, Esq. SBN 342160
104 Blue Note
Irvine, California 92618
Phone (949) 694-9702
Facsimile (949) 694-9704
anthony@apdlaw.net

Attorney for Plaintiff, *Anthony Ayala*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Anthony Ayala,<br><br>        Plaintiff,<br><br>v.<br><br>BlueChip Financial Services, Spotloan, and DOES 1 through 20,<br><br>        Defendants. | Case No.: **8:25-cv-00916-FWS-KES**<br><br>**PLAINTIFF, ANTHONY AYALA'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing: October 16, 2025<br>Time: 10:00 a.m.<br>Location: Courtroom 10D<br>Judge: Hon. Fred W. Slaughter |

## I.    INTRODUCTION

Defendant BlueChip Financial d/b/a Spotloan ("BlueChip") asks this Court to force Plaintiff Anthony Ayala's claims under the Fair Debt Collection Practices Act ("FDCPA"), Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), and Telephone Consumer Protection Act ("TCPA") into arbitration based on a loan agreement. The Court should deny BlueChip's motion. Here, Plaintiff never agreed to arbitrate BlueChip's post-revocation collection harassment. Plaintiff's claims arise from BlueChip's unlawful calls after Plaintiff revoked consent to such calls and notified BlueChip of legal representation, conduct independent of any loan

agreement. These extracontractual and tortious communications fall outside the scope of the arbitration clause. At minimum, factual disputes about notice, consent revocation, and BlueChip's conduct require denial of the motion or a trial on arbitrability under 9 U.S.C. § 4. For these reasons, BlueChip's motion to compel arbitration and to stay this action should be denied.

Moreover, Spotloan's arbitration clause impermissibly operates as a prospective waiver of Ayala's essential statutory protections under both federal and California law. Specifically, the arbitration clause: (1) mandates exclusive application of tribal law, thus categorically precluding any application of state law; (2) prohibits class-wide remedies and public injunctive relief, undermining essential public policy interests; and (3) delegates disputes over enforceability to an arbitrator who lacks authority to apply governing California law.

Those structural deficiencies render the arbitration agreement unenforceable under both California contract-law principles and the savings clause of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, which explicitly allows courts to invalidate arbitration agreements on "generally applicable contract defenses," including unconscionability, fraud, or duress. " The final clause of § 2, generally referred to as the savings clause, 'permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Poublon v. C.H. Robinson Co.,* 846 F.3d 1251, 1259 (9th Cir. 2017) (internal quotation marks and citations omitted). The FAA's primary purpose is that "of ensuring that private agreements to arbitrate are enforced according to their terms." *Munro v. Univ. of S. California,* 896 F.3d 1088, 1092 (9th Cir. 2018).

Numerous controlling decisions have unequivocally invalidated arbitration provisions virtually identical to Spotloan's as unconscionable and contrary to public policy. See *Gibbs v. Haynes Invs., LLC* (4th Cir. 2020) 967 F.3d 332.; *Dillon v.*

*BMO Harris Bank, N.A*., 856 F.3d 330, 336 (4th Cir. 2017); *Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 973 (N.D. Cal. 2019); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016); *Titus v. ZestFinance, Inc*., No. 18-5373 RJB, 2018 U.S. Dist. LEXIS 179380, (W.D. Wash. Oct. 18, 2018).

The consistent holdings of these cases underscore that Spotloan's arbitration scheme represents precisely the type of unenforceable contractual arrangement courts routinely reject as substantively unconscionable and void against established public policy interests.

## II.    FACTUAL BACKGROUND

Plaintiff obtained a short-term installment loan from BlueChip (d/b/a Spotloan) on January 31, 2024. The loan agreement includes an arbitration clause governed by the Federal Arbitration Act ("FAA") and tribal law of the Turtle Mountain Band of Chippewa Indians, as BlueChip is a tribal lending entity. On April 22, 2024, Plaintiff's counsel sent BlueChip a written notice advising that Plaintiff was represented by an attorney regarding the debt, revoking any prior consent for BlueChip to contact Plaintiff's cell phone, and requesting BlueChip cease further communications.

Despite the clear revocation and notice of representation, BlueChip directly or through its agents proceeded to bombard Plaintiff's telephone with collection communications in the following months. Plaintiff alleges BlueChip placed dozens of calls to his cell number after receiving the cease and desist. None of these communications were authorized by Plaintiff; to the contrary, they occurred after Plaintiff expressly withdrew consent and demanded BlueChip stop contacting him. These persistent post-cease and desist communications form the basis of Plaintiff's claims under the FDCPA, Rosenthal Act, and TCPA.

Plaintiff filed this action on May 1, 2025, seeking relief for BlueChip's unlawful debt-collection practices. BlueChip now moves to compel arbitration, arguing Plaintiff's claims "relate to" his loan and thus fall within the loan's

arbitration provision. BlueChip's arbitration clause purports to cover "*all claims and disputes regarding this Loan Agreement and/or any of our past, present, or future dealings with each other*." As shown below, BlueChip's arguments lack merit. Plaintiff's statutory tort claims fall outside the scope of the arbitration clause. Furthermore, enforcing BlueChip's tribal arbitration clause in these circumstances would undermine important public policies and leave Plaintiff without a fair forum for his state and federal rights. Finally, disputed factual issues bearing on arbitrability preclude any order compelling arbitration without a trial.

### III.  ARGUMENT

### A.  Plaintiff's FDCPA, Rosenthal, and TCPA Claims Arise from Post-Revocation Conduct Independent of the Loan Agreement

Plaintiff's claims do not "arise from or relate to" the loan contract, they arise from BlueChip's two distinct forms of misconduct; 1) collection on a debt after knowing of attorney representation under Rosenthal and FDCPA; and 2) calling Mr. Ayala despite revocation of consent under TCPA. Those communications violated statutory duties created by Congress, duties wholly independent of the loan agreement. Once Plaintiff revoked consent and told BlueChip to stop contacting him, any contractual permission to call him ended. BlueChip's subsequent barrage of calls was not authorized by the contract; it was a series of tortious acts in breach of federal and state law. Mr. Ayala's claims do not seek to enforce contract terms, rather they seek to enforce statutory remedies unrelated the four corners of the contract – specially with respect to TCPA (which is telemarketing protections, not debt). The enforcement of the these remedies do not requirement interpretation of the parties contact.

BlueChip's attempt to drag Mr. Ayala's claims into arbitration ignores this fundamental point. While the loan agreement created the lender-borrower relationship, the specific disputes at issue stem from BlueChip's extracontractual and statutory duties. Here, Plaintiff's causes of action exist independently of the

contract, the loan agreement was merely the but-for factual backdrop, not the legal basis, for BlueChip's liability. Because Plaintiff's claims are grounded in statutory tort law rather than contract law, they do not fall within the scope of the loan's arbitration provision.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). Here, similarly, Plaintiff never agreed to arbitrate BlueChip's liability for violating federal and state collection laws, as those claims are not grounded in the contract. Importantly, the parties cannot contemplate TCPA violations until after a revocation of consent.

In fact, another court confronting nearly identical circumstances held the claims were outside the arbitration clause. The *Ioane v. MRS BPO* court denied a motion to compel arbitration reasoning the plaintiff's claims "rely on and are founded in federal consumer protection statutes, not his Customer Agreement". *Ioane v. MRS BPO, LLC,* 484 F. Supp. 3d 888, 898,

Because the consumer's claims did not depend on the contract's terms, arbitration could not be compelled. So too here, Plaintiff's claims rely on federal and state statutory rights against harassing debt-collection calls and telemarketing calls, not on any right or obligation created by the loan agreement.

Likewise, in *In re Jiffy Lube Int'l, Inc.*, 847 F. Supp. 2d 1253, the court refused to enforce an "any and all disputes" arbitration clause where the claim bore only a tenuous link to a prior service invoice. The court further explained "[t]he existence of the original contract may have been the 'but for' cause of the alleged TCPA violation, but this alone is not necessarily enough to establish that the claim arises out of or relates to the contract." TCPA applies even when there is no relationship or contract among the parties. To hold otherwise, the court warned, would lead to "absurd results" where virtually any future misconduct by one party could be swept

into arbitration simply because a past contract existed. At most, the loan contract was a but-for factual cause of Plaintiff's injuries; it does not follow that Plaintiff's statutory tort claims "relate to" the contract in the sense required to compel arbitration.

In sum, Plaintiff's FDCPA, Rosenthal, and TCPA claims lie beyond the contemplated scope of the arbitration agreement. The alleged unlawful communications were not part of any agreed "dealings" under the loan; they were in breach of Plaintiff's explicit instructions and duties that arise under state and federal law. For the Court to compel arbitration, BlueChip must demonstrate Plaintiff agreed to arbitrate this specific dispute. BlueChip has not done so. To the contrary, the record shows a sharp break in consent, once Plaintiff revoked permission to be contacted, any subsequent collection activity was outside any reasonable expectation of the contracting parties. Because the arbitration clause does not clearly encompass such extracontractual, post-revocation conduct, Plaintiff cannot be forced to arbitrate these claims.

### B.    Structural Limits Render the Arbitration Clause Unenforceable

Defendant dismisses Plaintiff's concerns as "baseless." However, in *Heckman v. Live Nation Entertainment, Inc*., 120 F.4th 670 (9th Cir. 2024), the court found Ticketmaster's mass-arbitration protocol, featuring delegation of gateway issues, truncated procedures, and limited appeal rights, posed procedural and substantive unconscionability under California law, and enforcement of such a scheme was not preempted by the FAA. *If there is* "substantial procedural unconscionability... even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." *OTO, LLC v. Kho*, 8 Cal. 5th 111, 251 Cal. Rptr. 3d 714, 447 P.3d 680, 693 (Cal. 2019).

"Consistent with these contract principles, the Supreme Court has recognized that arbitration agreements that operate "as a prospective waiver of a party's right to pursue statutory remedies" are not enforceable because they are in violation of

public policy…Under this "prospective waiver" doctrine, courts will not enforce an arbitration agreement if doing so would prevent a litigant from vindicating federal substantive statutory rights." *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017).

Here, despite the Governing Law clause purporting to preserve individual federal claims, the arbitration clause simultaneously bars class actions and public injunctive relief. By eliminating meaningful enforcement tools and foreclosing collective remedies while invoking tribal law as governing, the clause operates as a de facto waiver of statutory rights. Plaintiff's preemptive challenge raises valid questions under binding doctrine and meets the requisite burden to oppose enforcement at this juncture.

**C.     The Arbitration Schemes are Structurally Unconscionable and Void Against Public Policy**

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable," except where "grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts may invalidate arbitration agreements that operate "as a prospective waiver of a party's right to pursue statutory remedies " *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19 (1985) ("[W]e merely note that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.").

Courts also scrutinize delegation clauses and may refuse to enforce them if they are subject to the same infirmities as the arbitration clause itself. The *Gibbs* court held the district court did not err by considering the borrowers' specific challenge to the delegation clauses in the context of the challenge to the entirety of the agreements because the borrowers challenged those clauses with sufficient force and specificity and the same arguments applied to both. *Gibbs v. Haynes Invs.*, LLC,

967 F.3d 332 (4th Cir. 2020). *Dillon* holds courts may not enforce arbitration provisions that operate as structural waivers: "Because the effect of the arbitration agreement is unambiguous in the context of the whole contract, we conclude that the arbitration agreement functions as a prospective waiver of federal statutory rights and, therefore, is unenforceable as a matter of law." *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336.

### i.    Attempt To Preserve Federal Claims

Spotloan's arbitration agreement includes the following recitation: "Neither this Governing Law provision nor any other provision of this Loan Agreement shall be construed to waive any of your rights under U.S. federal law." But the governing-law clause also states: "the laws of the Tribe will apply rather than the laws of your state or any other state." See "Governing Law," Loan Agreement § titled "Governing Law," [Doc 13-3 Page 7 of 14]

*Dillon* rejected this type of structure: The arbitration agreement "almost surreptitiously waives a potential claimant's federal rights through the guise of a choice of law clause"." *Dillon v. BMO Harris Bank,* N.A., 856 F.3d 330, 335.

*Titus* rejected similar language: "If mere reference to a federal law was sufficient to save the contract, then it would render the 'effective vindication' exception meaningless." *Titus v. ZestFinance, Inc.*, 2018 U.S. Dist. LEXIS 179380, 14.

Nor does the arbitration agreement ensure a tribal tribunal will provide equivalent remedies, especially remedies equivalent to Rosenthal. To the contrary, it states: "The arbitrator may award injunctive relief in favor of the individual party seeking relief, but not in favor of others." See Arbitration Agreement § titled "Is injunctive relief possible?", [Doc 13-3 Page 10 of 14]. The agreement continues: "If a court decides that these limits on public injunctive relief are not enforceable, then after any and all appeals from that decision have been exhausted, the Claim for public injunctive relief must be severed from the arbitration." Those provisions categorically eliminate public injunctive relief.

Furthermore, the arbitration agreement grants exclusive authority to the arbitrator to "decide all issues relating to the merits of Claims…including...whether the Governing Law provision in the Loan Agreement is enforceable." excluding state law. See Arbitration Agreement § titled "What law applies?", [Doc 13-3 Page 8 of 14]

The contract fails to guarantee any enforcement of California or federal statutory rights. It eliminates class actions and public relief (Arbitration Agreement §§ "Are you waiving class action rights?", "Is injunctive relief possible?"), and strips the tribunal of the authority to award state-law remedies, such as Rosenthal (as discussed is not waivable and California has a greater interest in consumer protection and is not preempted by the FAA). The agreement includes no provision requiring the arbitrator to apply federal or state law remedies in a manner comparable to a public court.

**ii.    California Choice-of-Law Principles**

Under California choice-of-law principles, a contractual choice-of-law provision is unenforceable if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties" *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 465 [11 Cal.Rptr.2d 330, 834 P.2d 1148].

If "there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue ....' (Rest., § 187, subd. (2).)" *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 917

The Rosenthal Act and CLRA codify non-waivable rights. "Applying the privilege in this manner would effectively vitiate the Rosenthal Act and render the protections it affords meaningless." *Komarova v. National Credit Acceptance, Inc.,*

175 Cal. App. 4th 324, 338

"Further, as noted in *Butler v. Resurgence Financial, LLC* (C.D. Cal. 2007) 521 F.Supp.2d 1093, 1096, the Rosenthal Act 'is a remedial statute [that] should be interpreted broadly in order to effectuate its purpose.' (*Accord People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313 [58 Cal.Rptr.2d 855, 926 P.2d 1042] ["civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose"].) For these reasons, we conclude that the Act would be significantly inoperable if it did not prevail over the privilege where, as here, the two conflict." *Komarova v. National Credit Acceptance, Inc*. (2009) 175 Cal.App.4th 324, 340.

Likewise, in *McGill v. Citibank, N.A*., the California Supreme Court held that "a provision in any contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law" *McGill v. Citibank, N.A*., 2 Cal. 5th 945, 961

Spotloan's agreement violates this policy. The contract states: "the laws of the Tribe will apply rather than the laws of your state or any other state," and separately confirms: "the laws of my state of residence do not apply to the Loan Agreement." See Confirmation of Disclosures [Doc 13-3 Page 114 of 14]. These provisions foreclose the application of California consumer protection law, directly contravening California's fundamental policy.

"[B]ecause the language of both sets of arbitration agreements provides that tribal law shall preempt the application of any contrary law, and the effect of such provisions is to thereby make unavailable to the borrowers the effective vindication of federal statutory protections and remedies, the arbitration agreements at issue amount to a prospective waiver. Consequently, the 'entire arbitration agreement is unenforceable. *Dillon*, 856 F.3d at 335-37; see also Hayes, 811 F.3d at 669-71, 675 (concluding that a tribal arbitration contract is unenforceable under the FAA where

it 'names a tribal forum and then purports to disavow the authority of all state or federal law')" *Gibbs v. Haynes Invs., LLC* (4th Cir. 2020) 967 F.3d 332

The Arbitration Agreement prohibits class claims, representative actions, and public injunctive relief. It requires individual arbitration only and limits the arbitrator's remedial authority to tribal law, stating "statutory, punitive, or treble damages" are allowed "if allowed by tribal or federal law." See Arbitration Agreement § titled "Are damages and attorney fees possible?" [Doc 13-3 Page 10 of 14]

By removing any assurance California statutory rights will be applied or enforced, and by disclaiming all remedies available under California law, the agreement violates California's strong public policy and must be deemed unenforceable.

The arbitration agreement waives state law categorically, creates a forum incapable of applying California or federal law, bars public injunctive relief, eliminates class proceedings, delegates enforceability to a tribunal that applies tribal law only, and fails to ensure equivalent remedies.

**D.    Factual Disputes Regarding Notice, Revocation, and Conduct Preclude Compelling Arbitration Without a Hearing**

Even if the Court were to credit Defendant's interpretation of the arbitration clause, factual disputes exist that make enforcement improper without a hearing under the Federal Arbitration Act. Section 4 of the FAA provides for a federal court to summarily determine the matter. "If requested by party resisting arbitration, the court is authorized to conduct a limited jury trial." *Geoffroy v. Washington Mutual Bank*, 484 F. Supp. 2d 1115.

"If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such

issue." 9 U.S. Code § 4.

"To implement this language, once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen v. LMB Mortg. Servs.* 1 F.4th 667, 669 (9th Cir. 2021)

Here, Plaintiff squarely contests whether Defendant's post-revocation communications fall within any agreement to arbitrate. Plaintiff revoked consent through written notice on April 22, 2024, Defendant received the revocation, and Defendant nonetheless attempted to communication with Plaintiff. These disputes, whether notice was given, whether revocation was effective, and whether Defendant engaged in the alleged conduct, are central to determining whether Plaintiff's claims fall inside or outside the scope of arbitration.

These factual disputes preclude compelling arbitration at this stage. A hearing, or jury trial, on the existence and scope of consent and revocation is necessary under 9 U.S.C. § 4 before arbitration can be ordered. Eliminating this step would prematurely decide the very question the statute demands courts resolve before sending parties to arbitration.

### E.    A Stay Is Neither Required Nor Appropriate

The FFA mandates a stay only "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3. That threshold has not been met. Plaintiff's claims arise from post-revocation conduct and statutory violations outside the scope of the loan agreement, and material factual disputes regarding notice, revocation, and Defendant's subsequent conduct preclude any finding of arbitrability without trial under 9 U.S.C. § 4 Unless arbitrability is conclusively established, a stay is improper and "proceed without delay to a trial on arbitrability." *Hansen v. LMB Mortgage Servs.*, Inc., 1 F.4th 667, 670–71 (9th Cir. 2021).

A stay is imposed only once arbitrability is established. It does not apply where arbitrability is actively contested, nor where Plaintiff asserts statutory rights remain enforceable in court, including claims under the FDCPA, Rosenthal Act, and TCPA. Because arbitrability has not been established and Plaintiff's federal and state statutory causes of action fall outside the arbitration clause, Section 3 provides no basis for staying the proceedings. Courts do not uniformly say a motion to compel arbitration counts as "otherwise defend" under rule 55 and tolls the duty to answer.

Defendant's failure to timely answer constitutes a default, extinguishing Defendant's right to litigate or contest the merits. Plaintiff requests the Court note Defendant's default on the record and dismiss this motion with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, BlueChip's motion to compel arbitration should be denied. Plaintiff's FDCPA, Rosenthal Act, and TCPA claims arise from post-revocation collection harassment and fall outside the scope of the loan agreement's arbitration clause. Even if the clause reached such conduct, it is unenforceable because its structural limits. At a minimum, genuine factual disputes regarding Plaintiff's revocation of consent and BlueChip's subsequent conduct must be resolved under 9 U.S.C. § 4 before any arbitral forum could be imposed. Because arbitrability has not been established, Section 3 of the FAA provides no basis for a stay. Plaintiff respectfully requests that the Court deny BlueChip's motion in full and allow these statutory claims to proceed in this Court.

RESPECTFULLY SUBMITTED,

THE LAW OFFICE OF
ANTHONY PAUL DIEHL

Dated: September 25, 2025.        By: /s/ Anthony P. Diehl
                                       Anthony Diehl, Esq.